**STATE of Maine**

v.

**Donald KELLY.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 27, 1994.

Decided July 5, 1994.

Michael E. Carpenter, Atty. Gen., Donald W. Macomber, Asst. Atty. Gen., Augusta, for state.

Peter E. Rodway, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

■ Defendant Donald Kelly appeals from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) revoking his Intensive Supervision Program (ISP) and ordering him to serve the remaining portion of his sentence in institutional confinement. Kelly contends that the court erred in finding that he had violated a condition of his ISP by refusing to submit to electronic monitoring. Finding no error, we affirm the judgment.

In 1992, Kelly was convicted[1] of two counts of Class B theft and one count of Class C theft, 17–A M.R.S.A. § 353 (1983), and the court imposed concurrent sentences of six years for each Class B count and a concurrent sentence of eighteen months for the Class C count. All but three years of the sentence on the Class B counts was suspended,[2] with the last eighteen months to be served with intensive supervision. *See* 17–A M.R.S.A. §§ 1261–1267 (Supp.1993).[3] Special conditions were imposed on Kelly's participation in ISP, including submitting to electronic monitoring at the discretion of his ISP team of officers. Kelly signed a document in which he acknowledged and accepted these conditions as written. The document that Kelly signed also stated that failure to abide by the conditions would result in removal from ISP and from the community.

At the ISP revocation hearing, ISP Officer Joseph Dentico testified that on June 8, 1993, Kelly had been issued a written warning for violations of his ISP conditions. Kelly tele-

1. Kelly's appeal of the convictions was unsuccessful. *State v. Kelly*, No. 6560 (Me. July 2, 1993) (Mem.Dec.).

2. All but six months and one day of the sentence on the Class C count was suspended.

3. "A sentence to imprisonment with intensive supervision means a sentence to confinement outside an institution under a set of rigorous conditions imposed at the time of sentencing. It is an alternative to institutional confinement[.] ..." 17–A M.R.S.A. § 1261(1) (Supp.1993). A sentence with intensive supervision is subject to mandatory and optional conditions that may be as restrictive "as ... if the prisoner were actually housed at a maximum security institution." 17–A M.R.S.A. § 1264(3)(B) (Supp.1993).

phoned the ISP office later that day and Officer Timothy Farr, Kelly's other ISP officer, told him that they intended to place Kelly on electronic monitoring.

Approximately an hour later, Kelly came to the ISP office without permission and told Dentico that he could not be placed on electronic monitoring. Electronic monitoring is done by an ankle bracelet and Kelly protested that it would be visible to his clients and could interfere with his business. When told that the bracelet was not visible underneath pants, Kelly said that he wears shorts in the summer. Dentico testified that

> [Kelly] said, ["]I'm sorry, I'm not going to wear it, take me to jail, I would rather go to jail.["] It's not uncommon for people to, prisoners to at first show some reluctance to electronic monitoring. I've never had anyone on this program that's done it with a smile on their face. So I gave him a chance to spout off and get it out of his system.... He said he wanted a judge to make this decision, and I explained to him that this was our decision; that this was actually a condition of his ISP, and he again said[, "]take me to jail, I'll have the state support me, I can write my book in jail.["] Again, you know, I tried to make him realize just what that meant, that, you know, other people have been on this bracelet, and they have managed to conduct their daily affairs, that it hasn't been a hindrance, and he said[, "]it is going to be for me, I'm just not going to wear it[."] ... [A]fter it was clear that he wanted to go to jail I explained to him that [he] would eventually have the right to a hearing before a judge, however [he] would have to sit in jail possibly for up to a week before that hearing takes place, and he sat there in silence.... At one point he stood up and held his hands out like this (indicating), I believe it was a gesture for us to handcuff him. I had to tell him to sit down.... I stepped out of the room to retrieve my handcuffs, because at that point I had decided that he was going to go to jail, and I returned, and I took him into custody, placed handcuffs on him.

Dentico stated that he believed Kelly's protests effected a refusal to wear the brace-

let because Kelly was so adamant that he could not do his job with the bracelet. Dentico testified that when he put the handcuffs on, Kelly acted very surprised and denied that he had refused to submit to electronic monitoring.

Officer Farr, present during part of the incident, testified to the same effect, that Kelly's protests amounted to a refusal to submit to electronic monitoring.

> My interpretation was that he was refusing to accept it, and conveyed to me that he wanted the judge to make the decision as to whether he needed it or not. I advised him that the decision was made at the time of sentencing when he signed the ISP contract and agreed to the use of electronic monitoring at our discretion.

Kelly testified that he was afraid of wearing the bracelet because he feared that he would violate his ISP unknowingly and that the bracelet would get him in trouble. He said his protests were not a refusal, but rather a reaction of fear. Kelly also testified that he believed that if he was willing to go to jail, a judge would make the final decision about whether he needed to wear the bracelet.

The court found Kelly to be in violation, revoked his ISP, and sentenced him to serve the remaining 420 days of his sentence in prison. Kelly timely appealed to this court.

ISP is a sentence to confinement outside an institution under a set of rigorous conditions. 17–A M.R.S.A. § 1261(1). Although it is an alternative to institutional confinement, it is still a sentence to a term of imprisonment. *Id.* at § 1261(1) & (3). Termination of ISP is governed by 17–A M.R.S.A. § 1265. Section 1265(3) states in pertinent part:

> If the court finds by a preponderance of the evidence that the prisoner has violated a condition of his intensive supervision, the prisoner shall serve, in institutional confinement, the balance of the portion of the sentence of imprisonment which was to be served with intensive supervision.

Kelly argues that the evidence did not show that he refused to wear the monitoring device, but rather that he had reservations

about wearing it; because he was never presented with the bracelet and ordered to wear it, he could not have refused.

■ Pursuant to section 1265(3), in order to have ISP revoked, the State must prove the prisoner's violation of ISP conditions by a preponderance of the evidence. The court found that the State proved that Kelly refused to submit to electronic monitoring and that the refusal violated a condition of his probation. We will not set aside a finding of fact unless it is clearly erroneous, i.e., without competent evidence in the record to support it. *Morin Bldg. Prod. Co., Inc. v. Atlantic Design & Constr. Co., Inc.*, 615 A.2d 239, 241 (Me.1992). In this case, the testimony of Officers Dentico and Farr presented competent evidence in the record to support the court's finding that Kelly refused to submit to electronic monitoring. *See State v. Landry*, 428 A.2d 1204, 1206 (Me.1981) (defendant's delayed willingness to submit to a blood-alcohol level test deemed a complete refusal and police not required to coddle a later change of mind).

In this case, as in *Landry*, Kelly was legally compelled to submit to state action or face specified consequences. Having signed a document submitting to ISP conditions, Kelly was aware of the consequences of his refusal to do so. Kelly initially resisted the state action and later recanted and offered to submit, as did Landry. As in *Landry*, the officers interpreted Kelly's statements and actions as a refusal. The Superior Court's acceptance of the officers' testimony, and its finding that Kelly refused to submit to electronic monitoring, is not clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.